UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWNTE J. MATHIS,

                Petitioner,                      Civil No. 06-15372
                                                          Criminal No. 05-20007
v.                                                               Honorable David M. Lawson

UNITED STATES OF AMERICA,

                Respondent.
_____/

## **OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE**

The petitioner, Shawnte J. Mathis, pleaded guilty to distributing 50 grams or more of cocaine base and was sentenced to the statutory minimum term of 120 months in prison. At the time of the guilty plea hearing, all parties believed that Mathis had no criminal record and was eligible for the "safety valve" that would have allowed him to avoid the 10-year minimum sentence. *See* 18 U.S.C. § 3553(f). When the presentence report (PSR) revealed a criminal history of juvenile convictions that rendered Mathis ineligible for the safety valve, he was given an opportunity to withdraw his guilty plea but declined. He appealed his conviction and sentence, but his attorney moved to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967), and filed a complying brief asserting no error. The court of appeals agreed, affirmed the conviction and sentence, and Mathis now has filed a motion to vacate his sentence under 28 U.S.C. § 2255. The grounds he asserts border on the frivolous: that his attorney was ineffective in this Court and on appeal for failing to raise several issues that have no merit, the prosecutor engaged in misconduct by obtaining an indictment for an act that does not constitute a crime, and the court did not have jurisdiction. The government opposes the motion procedurally and on the merits. The Court will deny it for the reasons discussed below.

I.

On January 26, 2005, the petitioner was charged in a two-count indictment with violating 21 U.S.C. § 841(a)(1) & (b)(1)(A) on one occasion and subsection (b)(1)(B) on another. The indictment alleged that the petitioner distributed fifty grams or more of cocaine base on September 8, 2004 and distributed five grams or more of cocaine base on October 6, 2004. Criminal Justice Act panel attorney Robert Dunn was appointed to represent the petitioner.

On April 26, 2005, the petitioner entered into a Rule 11 plea agreement. The agreement provided that the petitioner would plead guilty to count one, and count two would be dismissed. The mandatory statutory minimum sentence for count one is 120 months in prison. In the plea agreement, the petitioner agreed that he was "accountable for sentencing purposes for between 50-150 grams of cocaine base which is an offense level of 32," and the government agreed that the petitioner "met the criteria for §5C1.2," the safety valve provision, which permits a court to impose a sentence below the statutory minimum if certain requirements are met. Plea Agreement at 2. The plea agreement recognized that the Court was not bound by their stipulations, and the parties agreed that the petitioner could withdraw his guilty plea if the Court did not accept the stipulations. The petitioner further agreed not to appeal his sentence as long as the sentence did not exceed the bottom half of the guidelines range as determined by the Court with the following exceptions:

> [T]he defendant may appeal one or more of the following sentencing actions if defendant makes a timely objection (e.g., a timely objection to the presentence report, where applicable): (A) the court's application of a provision in the sentencing guidelines if the application was inconsistent with the stipulation of the parties or was unanticipated by the parties and adverse to the interests of the defendant; (B) the court's imposition of a sentence that exceeds the range contemplated in paragraph 2B of this agreement if the upward departure is unreasonable; (C) a decision by the court to impose a sentence consecutive to an undischarged term of imprisonment pursuant to U.S.S.G. § 5G1.3; (D) the court's denial of a reduction for acceptance of

responsibility; (E) the court's imposition of an enhancement for obstruction of justice.

Plea Agreement at 9-10.

Attached to the plea agreement was Worksheet D (Guideline Worksheet), which indicated that the parties agreed that the petitioner qualified for an offense level of 27 and a criminal history category of I. The Sentencing Guidelines range from the sentencing table based on those scores was 70 to 87 months. Worksheet D also showed a fine range of $12,000 to $125,000 and a special assessment of $100.

A plea hearing was held on April 26, 2005. At that hearing, the government recited the terms of the plea agreement on the record. The Court read the elements of the crime to the petitioner, which included the type and quantity of the controlled substance involved, and then inquired:

> THE COURT: Do you believe that if you went to trial the Government could prove those elements beyond a reasonable doubt?
> THE DEFENDANT: Yes, sir.
> THE COURT: How then are you going to plead to the charge of delivery of 50 grams or more of crack cocaine?
> THE DEFENDANT: Guilty.
> THE COURT: And are you entering a guilty plea to that charge because you believe you are guilty?
> THE DEFENDANT: Yes, sir.
> THE COURT: Would you tell me what you did that makes you believe you are guilty?
> THE DEFENDANT: I delivered 50 grams of cocaine to an informant.
> THE COURT: Were you working with someone else or by yourself?
> THE DEFENDANT: By myself.
> THE COURT: Did you get the cocaine from some other source, or did you cook it up?
> THE DEFENDANT: Other source.
> THE COURT: All right. Did you get it as powder or did you get it as crack.
> THE DEFENDANT: Crack.
> THE COURT: When you delivered the cocaine to the informant did you know that it was cocaine?
> THE DEFENDANT: Yes, sir.
> THE COURT: And did you know – I'm sorry. Did you know it was cocaine base?

>THE DEFENDANT: Yes, sir.
>THE COURT: In other words, did you know it was crack
>THE DEFENDANT: Yes, sir.
>THE COURT: All right. What city were you in when that happened?
>THE DEFENDANT: Saginaw.

Plea Hr'g Tr. 23-25, Apr. 26, 2005. The petitioner also told the Court that he had no prior criminal record:

>THE COURT: Now, have you ever been in trouble with the law before?
>THE DEFENDANT: No, sir.
>THE COURT: You have no prior criminal record according to what I see here; is that right?
>THE DEFENDANT: That's right.

Plea Hr'g Tr. 18, Apr. 26, 2005.

After the plea was taken, a PSR was prepared, which revealed that the petitioner did, in fact, have several juvenile convictions. On April 4, 2002, when he was 16 years old, the petitioner pleaded guilty to carrying a concealed weapon. He was sentenced to 90 days in custody. PSR ¶ 49. On January 22, 2003, when the petitioner was 17 years old, he pleaded guilty to discharging a firearm at a building and carrying a concealed weapon. He was sentenced to one year in custody and credited with time served. PSR ¶ 54. The Sentencing Guidelines assign two criminal history points for every juvenile sentence "of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." U.S.S.G. § 4A1.2(d)(2)(A). Because of the sentences he received as a juvenile, the petitioner's criminal history score placed him in category III, rendering him ineligible for the "safety valve," that is, a sentence below the statutory mandatory minimum prison term according to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The petitioner was given the opportunity to withdraw his guilty plea due to this development, but he chose not to do so. Sent. Hr'g Tr. 2-3, Nov. 9, 2005.

At sentencing on November 9, 2005, the petitioner objected only to the determination that the January 22, 2003 juvenile conviction qualified for two criminal history points under U.S.S.G. § 4A1.2(d)(2)(A). The petitioner contended that he actually served less than 60 days, and therefore two points should not be added based on this conviction. That objection was overruled by the Court as follows:

> THE COURT: Now, with respect to criminal history, the defendant has 2 criminal history points as a result of the offense described in paragraph 49 of the report. I don't think there's a dispute about that. There is an objection concerning the offense in paragraph 54, I believe.
> MR. DUNN: That's correct.
> THE COURT: Because it's alleged that the defendant did not actually serve 60 days. The report says that the defendant pleaded guilty and was sentenced up to one year in custody, got credit for time served. But it's your argument, Mr. Dunn, he did not actually serve more than the 60 days?
> MR. DUNN: That's correct, he was let out in less than 60 days.
> THE COURT: All right. The court overrules that objection because under Section 4A1.2(d)(2)(A), the criminal history points are assigned based upon the sentence imposed rather than the sentence actually served. And also, according to paragraph 58, the defendant actually was in juvenile custody from November of 2002 to July 2003. So the court will overrule that objection.

Sent. Hr'g Tr. 5-6, Nov. 9, 2005. The Court concluded that the petitioner had an offense level of 29 and a criminal history category of III, resulting in a sentence range of 108 to 135 months imprisonment. The low end of the range was increased by operation of the mandatory minimum prescribed by 21 U.S.C. 841(b)(1)(A)(iii). The petitioner was sentenced to 120 months of imprisonment to be followed by five years of supervised release, which is the minimum sentence the Court could impose under the statute.

On November 18, 2005, the petitioner filed a notice of appeal. Mr. Dunn thereafter filed a motion to withdraw as the petitioner's attorney in which he stated there were no arguable issues on appeal. The petitioner did not respond to the motion. On August 3, 2006, the Sixth Circuit affirmed

the conviction. The court held that the petitioner was not eligible for safety valve sentencing because of his juvenile adjudications. The court of appeals agreed with this Court that it is the sentence imposed, rather than the sentence served, that determines whether criminal history points are added based on the conviction. The court also pointed out that "Mathis's other undisputed juvenile conviction eliminates him from consideration for a 'safety valve' reduction in any event." *United States v. Mathis*, No. 05-2576, slip op. at 3 (6th Cir. Aug. 3, 2006). The court concluded that, because the petitioner was competent to plead guilty, "no viable grounds to challenge the validity of Mathis's conviction exist." *Ibid*. Furthermore, since the Court sentenced the petitioner to the statutory minimum, "no shorter sentence was possible," eliminating any basis to challenge the sentence. *Ibid*.

II.

In his present motion, the petitioner contends first that his attorney was ineffective for (1) encouraging him to waive his appeal rights; (2) failing to object to a period of supervised release as part of his sentence, which the petitioner contends is a violation of the Fifth, Sixth, and Eighth Amendments; (3) failing to object to the $100 assessment fee that the petitioner states is not mandated by the statute; (4) failing to object to subject matter jurisdiction under 40 U.S.C. §3112(b); (5) permitting him to plead guilty to an act that does not constitute a crime under a statute that is unconstitutionally vague; and (6) failing to raise these issues on appeal and instead filing an *Anders* brief and seeking to withdraw as counsel. The petitioner's second claim is that the prosecuting attorney engaged in misconduct by securing an indictment for an act that does not constitute a crime, which violates the Fifth Amendment. The petitioner's final claim is that the Court did not have subject matter jurisdiction because the case did not involve property or land of the United States.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A.

A claimed violation of the right to effective assistance of counsel states a constitutional violation cognizable under section 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

Mathis's claim of ineffective assistance of counsel must fail because he can demonstrate neither deficient performance nor prejudice. Mathis's catalog of things Mr. Dunn should have done in the defense of this case includes nothing of merit. Neither trial nor appellate counsel can be found to have performed deficiently by failing to raise issues that have no merit. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (holding that "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues").

The petitioner asserts that counsel made a mistake by allowing Mathis to sign a plea agreement that contained a limited appeal waiver, but Mathis has pointed to no issue that he could have raised on appeal, and the court of appeals agreed that none existed. The five-year term of supervised release was not objectionable, disproportionate, or excessive, and was the minimum

required by the statute. *See* 21 U.S.C. § 841(b)(1)(A). Likewise, the $100 special assessment fee was statutorily required. 18 U.S.C. § 3013(a)(2)(A).

The petitioner's argument that his attorney missed a jurisdictional objection is based on a misreading of 40 U.S.C. §3112(b), which has nothing to do with controlled substance cases. That statute reads as follows:

> (b) Acquisition and acceptance of jurisdiction.– When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.

40 U.S.C. § 3112(b). Rather, the controlling statute is 18 U.S.C. § 3231, which gives "[t]he district courts of the United States . . . original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

Finally, the petitioner's suggestion that the statute under which he was charged, 21 U.S.C. § 841, does not define a federal crime finds no support whatsoever. Rather, the Sixth Circuit has explained that "[s]ubsection (a) of § 841 sets out the basic crime of distribution of a controlled substance." *United States v. Rebmann*, 321 F.3d 540, 541 n.1 (6th Cir. 2003). Subsection (b) fills in the rest of the elements by stating the types and amounts of drugs that give rise to the several penalties stated. *See United States v. Martinez*, 430 F.3d 317, 339 (6th Cir. 2005). Mr. Dunn was not ineffective for failing to argue that 21 U.S.C. § 841 did not define a federal crime or that the statute was vague.

Mathis cannot demonstrate prejudice flowing from the alleged inadequate representation. "A defendant challenging his attorney's conduct during plea bargaining 'must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty.'" *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006) (quoting *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005)). Nowhere in the petitioner's motion or fifteen-page reply brief does the petitioner state he would not have pleaded guilty absent his attorney's allegedly ineffective assistance. This dooms his ineffective assistance claims.

Moreover, the petitioner "cannot satisfy the prejudice prong in the absence of any statement that he is actually innocent." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998). In his reply brief, the petitioner does contend that he is innocent. However, this claim is based on his argument that he "has not been charged with a crime, a felony criminal offense, he is actually innocent of violating any fedral [sic] felony crime, since 21 USC § 841 (a)(1)(2) [sic] is not an enacted provision of Title 21 as that of a criminal felony offense." Pet.'s Reply at 11. The petitioner's claim is not that he did not engage in the conduct at issue, distributing 50 grams or more of cocaine base, but rather that § 841(a)(1) does not make that act criminal. This argument has no merit.

The petitioner is not entitled to any relief on the ground that he was denied proper counsel under the Sixth Amendment.

B.

The petitioner's claim that the prosecuting attorney violated the Fifth Amendment by engaging in misconduct by securing an indictment for an act that does not constitute a crime is

procedurally defaulted and barred by the petitioner's guilty plea. The petitioner could have raised this claim on direct appeal but did not. A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims in a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Id.* at 164-65. *Accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts to raise them in a § 2255 motion, "he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. As noted earlier, the petitioner cannot establish either of these requirements.

In addition, it is well established that a valid guilty plea in a criminal proceeding generally forecloses claims arising from the alleged deprivation of constitutional rights occurring before the

entry of the plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Simply stated, a defendant who pleads guilty generally waives any non-jurisdictional claims that arose before his plea. *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001); *Siebert v. Jackson*, 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002). In such a case, the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *See Broce*, 488 U.S. at 569. Therefore, the petitioner's claim that the government attorney pursued a charge against him under a vague statute is foreclosed by the petitioner's guilty plea to the drug charge.

C.

As discussed above, the petitioner's claim that the Court did not have jurisdiction to try and sentence him for violating the Controlled Substances Act must be rejected out of hand. *See* 18 U.S.C. § 3231.

III.

The Court finds that the petitioner has not established that the sentence in this case was imposed in violation of the Constitution or laws of the United States. The petitioner, therefore, is not entitled to relief under 28 U.S.C. § 2255.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate sentence [dkt. #37] is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: June 26, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 26, 2007.

s/Felicia M. Moses<br>
FELICIA M. MOSES

---